UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Tammy L. Bell,

       Plaintiff,

      v.                               Civil Action No. 5:12-CV-25

Michael J. Astrue,
Commissioner of Social Security,

       Defendant.


## REPORT AND RECOMMENDATION
(Docs. 8, 12)

Plaintiff Tammy Bell brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and remand of the decision of the Commissioner

of Social Security ("Commissioner") denying her application for disability insurance

benefits. Pending before the Court are Bell's motion to reverse the Commissioner's

decision (Doc. 8), and the Commissioner's motion to affirm the same (Doc. 12). For the

reasons stated below, I recommend that Bell's motion be GRANTED, in part; the

Commissioner's motion be DENIED; and the matter be REMANDED for further

proceedings and a new decision.

## Background

Bell was thirty-six years old on her alleged disability onset date of April 18, 2009.

She completed high school, and has work experience as an assistant manager, cashier,

and stocker at a convenience store; a housecleaner; and a personal care attendant. She

worked part time for approximately the first five months of the alleged disability period. (AR 200, 209.)

Bell is married, and has two teenage children and one adult child. During the alleged disability period, her typical daily activities included getting her children ready for school, cooking meals for her family, caring for her cats, cleaning her home, shopping for groceries and clothing, going to appointments, watching television, and playing games and chatting on the computer. Also, at the time of the administrative hearing, she was receiving unemployment benefits and applying for at least three jobs each week. (AR 48-49.) Bell testified at the administrative hearing that she had pain in her hips and back, and thus was unable to walk any significant distance and required help with most of her daily activities, including cooking, cleaning, and shopping. (AR 38-42, 44.) She stated that her pain caused sleeping problems, and required her to lay down for ten-to-twenty minutes at a time eight-to-nine times each day. (AR 43, 45-46.) She further testified that she developed asthma in 2009, which was aggravated by pollen, dust, and cold air, and caused nausea and vomiting. (AR 47-48.)

In September 2009, Bell protectively filed an application for disability insurance benefits. Therein, she alleged that, starting on April 18, 2009, she has been unable to work due to back and hip pain, resulting in difficulty walking, standing, and sitting for extended periods of time. (AR 211.) Bell's application was denied initially and upon reconsideration, and she timely requested an administrative hearing. The hearing was conducted on June 7, 2011 by Administrative Law Judge ("ALJ") Dory Sutker. (AR 28-70.) Bell appeared and testified, and was represented by an attorney. Bell's aunt, Diane

Perkins, and a vocational expert ("VE") also testified at the hearing.  On June 24, 2011, the ALJ issued a decision finding that Bell was not disabled under the Social Security Act from her alleged onset date through the date of the decision.  (AR 18-27.)  Thereafter, the Appeals Council denied Bell's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1-3.)  Having exhausted her administrative remedies, Bell filed the Complaint in this action on February 7, 2012.  (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1),

416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Sutker first determined that, although Bell was working part time for the first few months of the alleged disability period, she had not engaged in substantial gainful activity during that period.  (AR 20.)  At step two, the ALJ found that Bell had the following severe impairments: bilateral trochanteric bursitis, asthma, obesity, and degenerative disc disease of the lumbar spine.  (*Id.*)  Conversely, the ALJ found that Bell's "iliotibial band syndrome" and respiratory ailments, including pneumonia and upper respiratory infections, were not severe.  (AR 21.)  At step three, the ALJ found that none of Bell's impairments, alone or in combination, met or medically equaled a listed impairment.  (AR 22.)  Next, the ALJ determined that Bell had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except as follows: "lifting and carrying is limited to 15 pounds and she needs to avoid moderate exposure to dust, fumes, odors, gases, poor ventilation[,] and

temperature extremes."  (AR 23.)  Given this RFC, the ALJ found that Bell was unable to

return to any of her past relevant work.  (AR 25.)  Finally, based on testimony from the

VE, the ALJ determined that Bell could perform other jobs existing in significant

numbers in the national economy, including the jobs of personal care attendant, packer,

marker and order taker, order clerk, bench worker, and stuffer.  (AR 26.)  The ALJ

concluded that Bell had not been under a disability from the alleged onset date of

April 18, 2009 through the date of the decision.  (AR 26-27.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  A person will be found disabled only if it is determined that his

"impairments are of such severity that he is not only unable to do his previous work[,] but

cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. §

423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a

"review [of] the administrative record *de novo* to determine whether there is substantial

evidence supporting the . . . decision and whether the Commissioner applied the correct

legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v.

Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  A court's factual

review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder.").  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305.  In its deliberations, the court should consider that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

<u>Analysis</u>

I.      **Opinions of Treating Physician Dr. Starr**

Bell argues that the ALJ did not properly evaluate the opinions of her treating primary care physician, Dr. Bram Starr.  In October 2009, Dr. Starr completed a "Fitness-For-Duty Certification" form, wherein he stated that Bell was restricted to lifting no more than fifteen pounds.  (AR 377.)  In the same month, Dr. Starr completed a Family and Medical Leave Act form titled "Certification of Health Care Provider for Employee's Serious Health Condition."  (AR 384-87.)  Therein, he stated that Bell had chronic lower back pain from a 2007 work injury and suffered "episodic flares."  (AR 385.)  Dr. Starr opined that Bell would need to be absent from work when these flare-ups occurred and would need to attend follow-up appointments including twice weekly physical therapy for her condition.  (AR 386.)  Although he stated that he did not know how frequently the

flare-ups would occur, or the "duration of related incapacity that [Bell] may have over [a six-month period]," Dr. Starr opined that Bell would not "be incapacitated for a single continuous period of time" and would not be required to work part time or on some other "reduced schedule," due to her "condition."  (*Id.*)

Although the ALJ gave "some weight" to certain of Dr. Starr's opinions, she found that Dr. Starr's "assessment of orthopedic-related limitations" was "not fully credible," given that "[Bell] saw Dr. Starr for asthma and not her hip or back conditions." (AR 24.)  Bell claims the ALJ's factual finding that Dr. Starr saw Bell for her asthma and not her hip or back conditions "is simply incorrect."  (Doc. 8 at 7.)  There is ample support in the record for Bell's claim.  Dr. Starr's treatment records demonstrate that he saw Bell not only for her asthma, but also for her hip and back pain, among other things. (*See, e.g.,* AR 296-302, 371-74.)  For example, Dr. Starr's treatment notes from September 15, 2009 state: "[Bell] comes in today to discuss her back pain. . . .  Her back and hip have been bothering her for the last 2 years."  (AR 296.)  Dr. Starr assessed Bell as having back pain with "some elements of a radiculopathy on her exam including a straight leg raising sign, and pain over palpation of the sciatic notch."  (*Id.*)  The Doctor also assessed Bell as having tendonitis, explaining that there was evidence of a "left greater trochanteric bursitis which may be due to previous trauma or perhaps a limp stemming from chronic low back pain."  (*Id.*)  Dr. Starr ordered an MRI of Bell's back, recommended that she continue with physical therapy, and considered referring her to an orthopedist for injection of her greater trochanter (a section of bone near the hip).  (AR 296-97.)  Approximately one month later, Bell had a follow-up appointment with Dr.

Starr for her lower back pain.  (AR 298-300.)  The Doctor noted that a detailed spine clinic evaluation was pending, and that physical therapy could be discontinued, as it was not helping.  (AR 300.)

The Commissioner argues that, even assuming the ALJ erred in finding that Dr. Starr did not treat Bell's hip or back conditions, the error was harmless, given that (a) Dr. Starr's opinion was not in favor of disability as a result of *either* Bell's orthopedic-related problems or her asthma; and (b) the ALJ ultimately adopted several of Dr. Starr's findings, including his assessment that Bell was capable of lifting only fifteen pounds. (Doc. 13 at 7-8.)  There is some merit to the Commissioner's argument.  First, it is true that Dr. Starr opined in the Family and Medical Leave Act form that Bell would not be incapacitated for a single continuous period of time and would not be required to work part time or on some other reduced schedule due to her "medical condition."  (AR 386.) But these conclusions regarding Bell's ability to work are not determinative: it is the responsibility of the Commissioner to make the ultimate decision as to whether the claimant has a "disability" under the regulations.  *See* 20 C.F.R. § 404.1527(d)(1). Second, the Commissioner accurately states that the ALJ found, in accordance with Dr. Starr's finding, that Bell could lift no more than fifteen pounds.  (AR 23, 377.)  However, the ALJ does not appear to have realized that this finding was in accord with Dr. Starr's. Rather, the ALJ stated that she did "not credit[]" Dr. Starr's opinion that Bell could lift "*no more than ten pounds*" because "it is not shown to apply to a consecutive period of 12 or more months and is contradicted by [Bell's] statement [that] she can lift 20 pounds and the functional capacity evaluation showing [that] she can lift 15 pounds."  (AR 24

(emphasis added).)  As noted above, Dr. Starr restricted Bell to lifting no more than *fifteen* pounds, not ten.  (AR 377.)  Although the ALJ's error may not have affected her ultimate decision (*see* Doc. 13 at 3 n.1), when considered in the context of the ALJ's multiple other errors in analyzing Dr. Starr's opinions, it is not insignificant.

Because Dr. Starr was Bell's treating physician, the ALJ was required to follow the "treating physician rule" in analyzing his opinions.  That rule states that a treating physician's opinion on the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(c)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 567-69 (2d Cir. 1993).  Even when a treating physician's opinion is not given controlling weight, the opinion is still entitled to *some* weight because a treating physician is "likely to be the medical professional[] most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence . . . ."  20 C.F.R. § 404.1527(c)(2).  When the ALJ decides to afford less than controlling weight to a treating physician's opinion, the ALJ must consider the regulatory factors—including but not limited to, the length of the treatment relationship, the frequency of examination, and whether the treating physician's opinion is consistent with the record as a whole—in determining how much weight is appropriate.  *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 417 (W.D.N.Y. 2006) (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); 20 C.F.R. § 404.1527(d)(2)-(6)); *see* 20 C.F.R. § 404.1527(d).  After considering these factors, the ALJ must "give good

reasons" for the weight afforded to the treating source's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks and citation omitted).

Applied here, the ALJ did not provide "good reasons" for the weight afforded to Dr. Starr's opinions. First, as noted above, the ALJ discredited certain of Dr. Starr's opinions on the grounds that Dr. Starr opined that Bell could lift "no more than ten pounds" (AR 24), when in fact Dr. Starr restricted Bell to lifting no more than fifteen pounds (AR 377). Second, the ALJ failed to mention Dr. Starr's most significant opinion: that Bell experienced "episodic flares" of her lower back pain symptoms (AR 385), and that those "flares" would periodically prevent Bell from performing her job functions, requiring her to be absent from work (AR 386). This omission leaves open the possibility that the ALJ was not even aware of that opinion.[1] Third, the ALJ failed to adequately explain her decision to afford "some weight" to certain of Dr. Starr's opinions while finding others "not fully credible." (AR 24.) Specifically, the ALJ gave "some weight" to Dr. Starr's opinions that Bell would not be incapacitated for a single continuous period due to her medical condition and that it was not medically necessary for her to work on a reduced schedule because of that condition. (*Id.*) At the same time, the ALJ found that Dr. Starr's "assessment of orthopedic-related limitations" was "not fully credible" because Dr. Starr had not treated Bell's hip or back conditions. (*Id.*) A reasonable reading of the Family and Medical Leave Act form completed by Dr. Starr

_____

[1] The ALJ's only mention of Bell's periodic flares of symptoms is as follows: "[Bell's] representative's assertion that bursitis flare-ups would cause absences several times a month is unsubstantiated by the evidence." (AR 24 (citing AR 281-84, a Memorandum prepared by Bell's attorney just prior to the administrative hearing).) This statement suggests that the ALJ was unaware of Dr. Starr's opinion that Bell experienced flare-ups of her lower back symptoms.

indicates that his opinions regarding Bell's ability to work were based exclusively on her back condition, specifically on her "chronic [lower back pain]" (AR 385): *no other medical conditions are mentioned or inferred in the form*. It makes little sense for the ALJ to state on the one hand that Dr. Starr was not qualified to assess Bell's back condition because he did not treat that condition, while on the other hand affording "some weight" to Dr. Starr's opinions regarding how that back condition affected Bell's ability to work. Although it is permissible for an ALJ to reject certain findings of a medical provider while affording substantial weight to others, *see Carpenter v. Astrue*, No. 5:10-cv-249, 2011 WL 3951623, at *6 (D. Vt. Sept. 7, 2011), there must be a rational reason for doing so.

In sum, the ALJ made the following errors in analyzing Dr. Starr's opinions: (1) stating that Dr. Starr saw Bell only for her asthma and not for her hip or back problems; (2) stating that Dr. Starr assessed Bell as being able to lift no more than ten pounds rather than fifteen pounds; (3) failing to mention Dr. Starr's significant opinion that Bell had "episodic flares" of lower back pain and would need to be absent from work during those flares (AR 385-86); and (4) failing to adequately explain her decision to afford "some weight" to certain of Dr. Starr's opinions, while finding other of his opinions "not fully credible" (AR 24). The Second Circuit has consistently held that an ALJ's failure to provide "good reasons" for not crediting the opinion of a treating physician is a ground for remand. *See Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998); *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians [sic] opinion

and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."). Moreover, from my review of the record, it is not possible to "glean" any "good reason" for deviating from Dr. Starr's opinions. *Sanders v. Comm'r of Soc. Sec.*, No. 11-2630-cv, 2012 WL 6684569, at *3 (2d Cir. Dec. 26, 2012). I therefore recommend that this matter be remanded so the ALJ may properly analyze Dr. Starr's opinions in accordance with the treating physician rule.

## II.     Duty to Recontact Dr. Starr

Bell argues that the ALJ should have recontacted Dr. Starr "[i]f the ALJ felt that Dr. Starr's opinion was vague or needed clarification." (Doc. 8 at 9.) In the Second Circuit, "the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (quotation marks omitted). This duty arises from the Commissioner's regulatory obligation to develop a complete medical record before making a disability determination, and exists even when the claimant is represented by counsel. *Id.* (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). Moreover, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing *Schaal*, 134 F.3d at 505 ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte*.")). On the other hand, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is

under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (quoting *Perez*, 77 F.3d at 48).

There are arguable ambiguities contained in the Family and Medical Leave Act form completed by Dr. Starr. Specifically, although Dr. Starr saw Bell for many conditions, including but not limited to lower back pain, hip pain, tendonitis, a urinary tract infection, asthma, and dizziness (*see, e.g.,* AR 296-302, 369-74); the only "medical condition" mentioned in the form is Bell's "chronic [lower back pain]" (AR 385). Dr. Starr's omission of any other condition reasonably could be interpreted to mean that the Doctor did not believe any of Bell's other conditions rose to a disabling level. Alternatively, this omission reasonably could be interpreted to mean that the Doctor believed (validly or not) that the only condition he was being asked to assess in the form was Bell's back condition. Additionally, Dr. Starr's statement that the frequency of Bell's flare-ups of back pain and duration of Bell's related incapacity were "unknown" (AR 386), reasonably could be interpreted to mean that the Doctor was uninformed on the topic (because, for example, he had not discussed it with Bell or was not the primary treating provider of Bell's back pain). Or, this statement reasonably could be interpreted to mean that it was impossible for anyone to know the frequency of Bell's flare-ups of back pain because they were unpredictable.

Because of the ALJ's incorrect analysis of Dr. Starr's opinions, it is unclear whether she: (a) failed to recognize the arguable ambiguities contained therein; (b) recognized these arguable ambiguities but, considering them in the context of the full record, found they supported a finding of non-disability; or (c) concluded that, regardless

of these ambiguities, there were no "obvious gaps" in the record and Bell's "complete medical history" was contained therein, making any attempt to recontact Dr. Starr unnecessary. On remand, the ALJ should explicitly consider this issue. If the ALJ determines that Dr. Starr's opinions are not ambiguous, and that there are no obvious gaps in the record, the ALJ need not recontact Dr. Starr. But if the ALJ perceives unresolvable ambiguities or inconsistencies in Dr. Starr's opinions, the ALJ should recontact Dr. Starr in an attempt to resolve those ambiguities or inconsistencies. *See Hartnett v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) ("[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly.") (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)); SSR 96-5p, 1996 WL 374183, at *6 (1996) ("[I]f the evidence does not support a treating source's opinion . . . and the [ALJ] cannot ascertain the basis of the opinion from the case record, the [ALJ] must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion.").

III.    **September 2010 Functional Capacity Evaluation**

Bell contends that the ALJ also erred in her analysis of a September 2010 Functional Capacity Evaluation ("FCE") completed by physical therapist ("PT") Rebecca Reed. (AR 345-55.) In relevant part, the FCE states that Bell had limitations in: repetitive weight-bearing activities including walking, stair climbing, and ladder climbing; repetitive lifts and carries; static positioning in weight-bearing including standing; and forward bending while standing. (AR 347.) The FCE further states that

Bell could do "standing work" and a six-minute walk test with "some limitation." (AR 348.)

The ALJ afforded "significant weight" to the opinions stated in the FCE, and noted that those opinions were "reflected in [her RFC determination]." (AR 24.) However, the RFC—which allows for the performance of "light work," as defined in the regulations (AR 23)—does not in fact reflect the significant findings made in the FCE. The Second Circuit has summarized the applicable regulation as follows: "Light work requires the ability to lift up to 20 pounds occasionally, lift 10 pounds frequently, *stand and walk for up to 6 hours a day*, and sit for up to two hours." *Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010) (emphasis added) (citing 20 C.F.R. § 404.1567(b)); *see also Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) ("The full range of light work requires *intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday*, with sitting occurring intermittently during the remaining time.") (emphasis added). As noted above, the FCE concluded that Bell had "some limitation" in standing and walking. (AR 348.) The FCE defines "some limitation" as "occasionally," or "6-33% [of the workday]" (*id.*), which would be a maximum of 2.64 hours in an 8-hour workday. Thus, according to the FCE, Bell could stand for a maximum of 2.64 hours and walk for a maximum of 2.64 hours in the workday, meaning she could walk and stand for a maximum total of approximately 5.3 hours each workday. An ability to walk and stand for a total of 5.3 hours each workday is insufficient to meet the "light work" requirement of standing and walking for up to 6 hours in the workday.

As noted above, the FCE was prepared by a PT, not a treating physician. Therefore, the ALJ was not required to analyze it in accordance with the treating physician rule. Nonetheless, the FCE was entitled to some weight, given that a PT is defined in the regulations as an "other [medical] source" whose records may be used "to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 CFR § 404.1513(d)(1); *see* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Social Security Ruling 06-03p requires ALJs to evaluate the opinions of "other" medical sources such as PTs in some depth, stating: "Opinions from these [other] sources . . . who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* at *3. The ruling directs ALJs to use the same factors for the evaluation of "other source" opinions as are used to evaluate opinions from "acceptable medical sources." *Id.* at *4 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).

Although the ALJ summarized the FCE in detail (AR 23), she neglected to note certain significant findings contained therein, including that hip discomfort was the reason for Bell's limitations in carrying, walking, and climbing activities; that "[o]bjective signs coincided with [Bell's] reports of discomfort"; that Bell performed "frequent weight shifting to help with pain management"; and that Bell demonstrated "significant perceived functional limitations[,] with pain [being] a primary concern." (AR 346.) Moreover, the ALJ did not state any reasons for affording "significant weight" to the FCE. Finally, and most significantly, as discussed above, the ALJ erroneously

stated that the FCE's findings were reflected in the RFC.  In fact, the FCE does not

support a RFC of full-time work at the light exertion level, but rather, supports a RFC at

the *sedentary* exertion level with the option to change positions frequently.  On remand,

the ALJ should more thoroughly analyze the FCE, considering in particular PT Reed's

findings regarding Bell's limited ability to walk and stand.

## IV.    Lay Evidence

Next, Bell asserts that the ALJ erroneously failed to consider the lay evidence,

including the oral testimony of Bell's aunt, Diane Perkins, and the written statements of

Bell's husband, Bryan Bell, and Bell's father-in-law, Scott Gagnon.  Although not

entirely cumulative, this lay witness evidence basically reiterated Bell's own testimony

that she struggled and required help with housework, had difficulty sleeping, suffered

from asthma symptoms, had trouble walking, and could not stay in one position for very

long.  (AR 59-60, 278-80.)  The ALJ did not mention any of this lay evidence in her

decision.

In support of her argument, Bell cites *Williams v. Bowen*, 859 F.2d 255 (2d Cir.

1988).  There, the ALJ rejected the uncontradicted testimony of the only two witnesses,

the claimant and her mother, without making any credibility assessment and without

mentioning this testimony in his findings.  *Id.* at 260.  Importantly, the court found that

both the claimant's and her mother's testimony "was uncontradicted and generally

consistent with the medical diagnoses." *Id.*  Although this case is distinguishable from

*Williams* because the ALJ here assessed Bell's credibility, it is similar because: (a) the

ALJ did not mention the statements of Bell's aunt, husband, and father-in-law in her

decision; and (b) this lay evidence appears to be uncontradicted and generally consistent with the medical diagnoses. In accord with the holding in *Williams*, Social Security Ruling 06-03p instructs that, in considering evidence from non-medical sources such as spouses, parents, and friends, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, 2006 WL 2329939, at *6. Clearly, the ALJ did not consider the lay witness evidence in this manner (or in any manner at all).

The Second Circuit has held that, "where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" the ALJ is "'not require[d] [to] have mentioned every item of testimony presented to h[er] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead h[er] to a conclusion of disability.'" *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir .2004); *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)). In this case, however, the ALJ at least should have mentioned the evidence in the context of assessing Bell's credibility, given that each witness corroborated Bell's allegations of functional limitation. *See Johnson v. Astrue*, No. ED CV 07-31 PJW, 2008 WL 2705172, at *2 (C.D. Cal. July 7, 2008) (ALJ's failure to mention potentially corroborative lay witness testimony not harmless because "[c]rediting that testimony might have caused the ALJ to reach a different decision regarding Plaintiff's credibility, and ultimately, Plaintiff's disability"). Although the ALJ heard the testimony of Bell's aunt at the

administrative hearing, it is impossible to determine from a review of the ALJ's decision whether she was even aware of the written statements of Bell's husband and father-in-law. *See Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980), an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.").

I find that, had the ALJ reviewed all three lay witness statements, she may have assessed Bell's credibility differently and may have determined that Bell had the RFC to perform only sedentary (not light) work. On remand, the ALJ should explicitly discuss the lay evidence, and if she decides to disregard it, she should state her reasons.[2]

## V. Credibility Assessment/RFC Determination

Finally, Bell argues that the ALJ's credibility assessment and RFC determination were not based on substantial evidence. As discussed above, the ALJ did not follow the treating physician rule in analyzing the opinions of treating physician Dr. Starr. Moreover, the ALJ erred in her analysis of the FCE completed by PT Reed. These errors necessarily affected the ALJ's credibility assessment and RFC determination. Therefore, the ALJ is required to reevaluate these issues on remand.

---

[2] Because I recommend remanding this matter due to the ALJ's failure to properly analyze the opinions of Dr. Starr and PT Reed, there is no need to determine whether, "in the absence of any other error, an ALJ's failure to even mention lay witness testimony, much less provide reasons for rejecting it, may constitute harmless error in circumstances not present here." *Thibault v. Astrue*, No. 5:10-cv-188, 2011 WL 5024460, at *6 n.7 (D. Vt. Oct. 20, 2011); *see also McKinstry v. Astrue*, No. 5:10-cv-319, 2012 WL 619112, at *6 n.5 (D. Vt. Feb. 23, 2012) (distinguishing *Thibault* in part because there, "the court ordered remand on other grounds").

Bell argues that, in assessing her credibility, the ALJ should not have considered her application for unemployment benefits. (Doc. 8 at 13-14.) Bell cites no binding or persuasive authority to support this position. To the contrary, courts in this circuit have held that a social security disability claimant's collection of unemployment benefits may in fact be considered in determining the claimant's credibility, although it should not be the determinative factor, nor should it be used as a means of finding no disability. *See Felix v. Astrue*, 11-CV-3697 (KAM), 2012 WL 3043203, at *10 (E.D.N.Y. July 24, 2012) (citing cases) ("Courts in the Second Circuit have held that an ALJ may consider evidence that the claimant received unemployment benefits and/or certified that he was ready, willing, and able to work during the time period for which he claims disability benefits as adverse factors in the ALJ's credibility determination."); *Plouffe v. Astrue*, No. 3:10 CV 1548(CSH), 2011 WL 6010250, at *22 (D. Conn. Aug. 4, 2011) (quoting from an August 9, 2010 Social Security Administration Memorandum for the proposition that: "'[R]eceipt of unemployment benefits does not preclude the receipt of Social Security disability benefits[,]' but rather, 'is only one of the many factors that must be considered in determining whether the claimant is disabled.'"); *Jackson v. Astrue*, No. 1:05-CV-01061 (NPM), 2009 WL 3764221, at *8 (N.D.N.Y. Nov. 10, 2009) (noting the apparent inconsistency with holding oneself out as ready to work for unemployment insurance while simultaneously declaring, for social security disability insurance purposes, that one cannot work). Likewise, courts in other circuits have held that a claimant's receipt of unemployment benefits while claiming to be disabled may be considered in assessing the claimant's credibility. *See, e.g., Schmidt v. Barnhart*, 395

F.3d 737, 746 (7th Cir. 2005) ("[W]hile we have previously held that employment is not proof positive of ability to work, we are not convinced that a Social Security claimant's decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work should play absolutely no role in assessing his subjective complaints of disability.") (internal quotation marks and citation omitted); *see also Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991) ("We . . . note that [claimant's] application for unemployment compensation benefits adversely affects his credibility. A claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing[,] and able to work. . . . Because [claimant's] application necessarily indicates that [he] was able to work, this may be some evidence, though not conclusive, to negate his claim that he was disabled . . . .") (citation omitted); *Perez v. Sec'y of Health, Educ. and Welfare*, 622 F.2d 1, 3 (1st Cir. 1980) ("although we have reservations about the significance of . . . evidence [that claimant collected unemployment benefits], we are reluctant to say that a claimant's decision to hold himself out as able to work for the purpose of receiving unemployment benefits may never be considered on the issue of disability"). The Sixth Circuit held as follows on the issue:

> [T]his court recognize[s] the inherent inconsistency in filing for disability benefits and unemployment benefits. Although Plaintiff argues that this inconsistency should not be embraced, she offers no reasonable explanation of how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that she is ready and willing to work.

*Bowden v. Comm. of Soc. Sec.*, 174 F.3d 854, 1999 WL 98378, at *8 (6th Cir. 1999).

Given this law and the "inherent inconsistency" between Bell's receipt of unemployment benefits and claims of disability for the same period, I find that the ALJ did not err in considering this inconsistency as one of many factors relevant to assessing Bell's credibility.[3]  On remand, although Bell's receipt of unemployment benefits while claiming to be disabled may not be the decisive factor in negating her disability claim, it may again be considered by the ALJ, particularly in the context of assessing Bell's credibility.

### Conclusion

In making these recommendations, I offer no opinion regarding the substantive merits of Bell's claim that she is disabled under the Social Security Act.  After a full review of the record, however, I find that the ALJ's decision is based on an erroneous legal standard and is not supported by substantial evidence, particularly with respect to the ALJ's analysis of Dr. Starr's opinions and the September 2010 FCE.  Accordingly, I recommend that Bell's motion (Doc. 8) be GRANTED, in part; the Commissioner's motion (Doc. 12) be DENIED; and the matter be REMANDED for further proceedings and a new decision.

Bell asks the Court to "reverse and remand this case with instructions to award benefits." (Doc. 8 at 18.)  In cases where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision," remanding for a calculation of benefits may be appropriate.  *Rosa v. Callahan*, 168 F.3d 72, 83 (2d

---

[3]  Specifically, the ALJ found that Bell was "not fully credible," in part because her "reported substantial daily activities," including "looking for work," were not consistent with disability.  (AR 25.)

Cir.1999).  Where, however, there are gaps in the administrative record or, as here, the ALJ has applied an improper legal standard, it is more appropriate to remand for further proceedings and a new decision.  *Id.* at 82-83.  In this case, after applying the correct legal standard and perhaps considering a more complete medical record, an ALJ may conclude that Bell retains the RFC to perform sedentary work.  In that event, an award of benefits would not be warranted.  Thus, Bell's request that the matter be reversed and remanded for an award of benefits should be denied.  *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) ("Remand is particularly appropriate where . . . we are 'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.'") (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).

Dated at Burlington, in the District of Vermont, this 6th day of March, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).